**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOHN DUNDON,** | Civil Case No.  3:21-CV-0236 (MAD/ATB) |
| **Plaintiff,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| | |
| **CHIPOTLE MEXICAN GRILL, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

1.      This is a proposed class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle"), arising from its deceptive and untruthful promises to provide "free delivery" or "$1 delivery" on food deliveries ordered through is app and website.

2.      Since the beginning of the COVID-19 pandemic, Chipotle has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace, Chipotle has prominently marketed "free" or "$1" delivery in its mobile application and on its website.

3.      These representations, however, are false. Chipotle imposes hidden delivery charges on its customers in two ways.

4.      First, on delivery orders only, Chipotle assesses an additional charge on food orders that it calls a "service charge."  This additional charge amounts to 10% more for the same food received by non-delivery customers. Because this fee is exclusively charged to delivery customers, and not to customers who order in-store or who order online and pick up their food in store, the

"service fee" is by definition a delivery fee.  Chipotle obscures the true nature of the fee by naming it a "service fee."

5.      Second, an even more insidiously, Chipotle secretly marks up food prices for delivery orders only by 12%-15%.  In other words, the identical burrito costs approximately $1 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

6.      Both of these hidden delivery upcharges make Chipotle's "free" or "$1" delivery promises patently false.  The true delivery costs are obscured, as described above, and far exceed the prominent "free" or "$1" promises.

7.      By falsely marketing "free" or "$1" delivery, Chipotle deceives consumers into making online food purchases they otherwise would not make.

8.      Chipotle misrepresents the nature of the delivery charges assessed on the Chipotle mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of the "free" or "$1" delivery promises, and that misrepresent the actual costs of the delivery service.

9.      Specifically, Chipotle omits and conceals material facts about the Chipotle delivery service, never once informing consumers in any disclosure, at any time, that: (a) use of the delivery service causes an increase in food prices; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

10.     Hundreds of thousands of Chipotle customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

11.     Consumers like Plaintiff reasonably understand the "free" or "$1" delivery representations mean the total additional cost they will pay as a result of having their food

delivered, as opposed to ordering online and picking up food in person or ordering and picking up food in person.

12.     By unfairly obscuring its true delivery costs, Chipotle deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Chipotle competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Chipotle, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

13.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chipotle's delivery mark-ups.

## PARTIES

14.     Plaintiff John Dundon is a citizen of the State of New York who resides in Binghamton, New York.

15.     Defendant, Chipotle Mexican Grill, Inc., is incorporated in Delaware and maintains its principal business offices in Newport Beach, California.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and (6). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and at least some members of the proposed Classes have a different citizenship from Defendant.

17.     The Northern District of New York has personal jurisdiction over Defendant because Defendant is a corporation authorized to conduct, and does conduct business, in the State of New York. Defendant is registered to do business in New York and intentionally avails itself of the New York market through the ownership and operation of numerous store locations throughout

New York, including within this District, which has caused both obligations and liability of Defendant to arise in this District.

18.    Venue is proper under 18 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## COMMON FACTUAL ALLEGATIONS

**A.    Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic**

19.    In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

20.    US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

21.    The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is

---

[1]    *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2]    *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3]    *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4]    *Id.*

to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

22.     Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

23.     According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

24.     The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

25.     In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery

---

[5]     *Id.*

[6]     *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7]     *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers

now view ordering food online for delivery as the safer option.[9]

26.     The era of COVID-19 undoubtedly caused a significant revenue boom for third

party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash,

Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in

just two quarters, April through September, following the enactment of shelter-in-place restrictions

throughout the nation.[10]

27.     The ramp up in utilization of food delivery services also had a massive positive

impact on restaurant owners who were quickly on the brink of facing permanent closures during

lockdown: 67% of restaurant operators said DoorDash was crucial to their business during

COVID-19 and 65% say they were actually able to *increase* profits during this time because of

DoorDash.

28.     In the wake of the food delivery surge, Consumer Reports highlighted the need for

fee transparency for consumers who use these apps and services.[11] A research team investigated

food delivery companies and the report measured their compliance with new rules regarding fees

enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It

---

[8]     *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9]     *Id.*

[10]     *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

[11]     *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.      Chipotle's App and Website Fails to Bind Users to Any Terms of Service**

29.     When a consumer downloads the Chipotle app, or uses the Chipotle website, she is required to create an account in order to place an order for delivery or pickup.

30.     In order to do so, a user enters in a name and contact information.

31.     While the account creation screen contains a small hyperlink to view Chipotle's Terms of Service, users are not required affirmatively consent to such terms, such as by clicking a check box.

**C.      Chipotle Prominently Promises Free or $1 Delivery on its App and Website**

32.     Beginning in early 2020, Chipotle began prominently featuring "free" or "$1" delivery promises on its mobile application and on its website.

33.     Such representations often are made on the home screen of the app or website.

34.     These "free" or "$1" representations are then reiterated on the penultimate screen shown to consumers before finalizing a food purchase.

35.     Specifically, for supposed "free" delivery orders, that penultimate screen states:

      Bag Total: [representing the cost of the food selected]

      Subtotal: [representing the cost of the food selected, minus any promotional codes]

      Delivery Fee:  FREE

      Taxes & Fees:  [representing sales taxes and additional fees]

      TOTAL:  [adding up the above]

36.     For supposed $1 delivery orders, the screen is the same, except that "$1" is placed in the "Delivery Fee" line.

37.     In the end, there was no way for Plaintiff or other users of the Chipotle mobile application or website to avoid seeing Chipotle's promises of "free" or "$1" delivery.

**D.    Chipotle Omits and Conceals Material Facts About the Costs of the Chipotle Delivery Service**

38.     But those disclosures were false and misleading.

39.     First, Chipotle furtively marked up the cost of food reflected in the "Bag Total"—adding 10% to the cost of burritos, tacos and quesadillas ordered for delivery.  Chipotle did not and does not make similar mark-ups for identical food items ordered via the same app or website, where such items are ordered for pickup instead of delivery.

40.     Chipotle omitted this material fact from its app and website disclosures, never informing users of this secret markup.

41.     This secret markup—which Chipotle only applied to delivery orders—is a hidden delivery fee.  This alone renders false Chipotle's promise of "free" or "$1" delivery, which is made repeatedly in the app and the website, and then repeatedly in the "Delivery Fee" line item on the order screen.

42.     In short, the "delivery fee" is not actually "free" or "$1."  The actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

43.     Second, Chipotle applies a "Service Charge" exclusively to delivery orders, hides that "Service Charge" from users behind a hyperlink, and misrepresents what the "Service Charge" is actually for:  a hidden delivery charge.

44.     On ordering screen, and for the first time in the ordering process, Chipotle presents

a line item called "Taxes and Fees."  The ordering screen does not explain what "Taxes and Fees" are comprised of.

45.      Only if a user clicks on "Taxes and Fees" do two further line items appear:  "Tax" and "Service Fee." "Tax" adds the locally applicable sales tax rate. "Service Fee" adds a further charge of 10% of the total food cost.  This "service fee" is exclusively applied by Chipotle to delivery orders, and is therefore by definition an additional hidden delivery charge.

46.      In short, the "delivery fee" is not actually "free" or "$1."  The actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" plus the hidden "Service Charge" markup applied exclusively to delivery orders.

47.      If that were not enough, Chipotle misrepresents the true nature of the "Service Charge."

48.      A disclaimer below "Service Fee" explains "[t]his helps offset the costs of digital convenience."

49.      This disclaimer is false.  The "Service Fee" is not for "digital convenience," it is a hidden delivery fee. This is necessarily true because the "Service Fee" is only assessed on delivery orders.  It is not assessed on order placed through the mobile app or website that are for pickup— even though the same so-called "digital convenience" is used by a consumer for such an order.

50.      Moreover, after an order is placed, Chipotle sends a receipt to users via email.  In that post-order email, and only it that post-order email, Chipotle states the true nature of the "Service Fee."  There, and only there, Chipotle states:  "This fee powers easy, integrated delivery." Chipotle thereby admits that the "Service Charge" is a fee for delivery, and for nothing else.

51.      Chipotle does not inform consumers the true costs of its delivery service and it misrepresents its delivery charges as "free" or "$1," when in fact those costs are actually much

higher.

**E.   Other Restaurant Industry Actors and Chipotle Competitors Disclose Delivery Fees Fairly and Expressly**

52.     By unfairly obscuring its true delivery costs, Chipotle deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Chipotle competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Chipotle, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

53.     For example, Del Taco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders.  Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

54.     All line-item amounts are **_identical_** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

55.     Similarly, Chipotle competitor El Pollo Loco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

56.     All line-item amounts are **identical** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

57.     Lastly, although Instacart, the grocery delivery service, does mark-up item charges for delivery orders made through its app, it provides an express warning to consumers that the item prices listed on its app are "higher than in-store prices." Instacart's clear disclaimer is made visible to consumers before they place their orders and allows consumers to understand that they are paying a higher price for utilizing the delivery service, as opposed to what they would pay had they purchased the same items in-store.

**F.      Plaintiff's Experience**

58.     Plaintiff used the Chipotle app to make a purchase of food on September 23, 2020, in the total amount of $38.00.

59.     When using the app, and prior to placing his order, the Chipotle app stated that delivery was $1.00.

60.     However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup. To illustrate, Chipotle charged Plaintiff $10.10 for a sofritas bowl.

61.     Upon information and belief, the same item would have cost Plaintiff 12-15% less than what he paid had he picked it up from the Chipotle location instead.

62.     In addition, Plaintiff's purchase included a hidden "Service Charge" that in fact represented an additional delivery fee. Chipotle charged Plaintiff a $2.86 service fee on his order.

63.     Upon information and belief, this same service fee is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had he picked up his order in person from the Chipotle location.

64.     Plaintiff would not have made the purchase if he had known the Chipotle delivery fee was not $1.00.

65.     If he had known the true delivery fee, he would have chosen another method for receiving food from Chipotle or ordered food from another provider.

## CLASS ALLEGATIONS

66.     Plaintiff brings this action on behalf of himself and as a class action on behalf of the following proposed Classes:

**New York Class:**
All consumers in New York who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chipotle mobile app or website, and were assessed higher delivery charges than represented.

**Nationwide Class:**
All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chipotle mobile app or website, and were assessed higher delivery charges than represented.

67.     Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

68.     This action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

69.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Classes;

however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

70. **Commonality**:  There are questions of law or fact common to the Classes, which include, but are not limited to the following:

    a.    Whether during the class period, Defendant deceptively represented "free delivery" or "$1 delivery" on food deliveries ordered through the Chipotle website and mobile app;

    b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

    c.    Whether Defendant engaged in deceptive business practices under the laws asserted;

    d.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

    e.    Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations;

    f.    Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

    g.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent "free delivery" or "$1 delivery" on food deliveries ordered through the Chipotle website and mobile app.

71. **Typicality**:  Like Plaintiff, many other consumers ordered food for delivery from

Chipotle's website or mobile app, believing delivery to be "free" or "$1" based on Defendant's representations. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

72.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

73.     **The Proposed Classes Satisfy the Rule 23(b)(2) Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiff remains interested in ordering food for delivery through Chipotle's website and mobile app; there is no way for him to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

74.     Specifically, Defendant should be ordered to cease from representing their delivery service as "free" or "$1" and to disclose the true nature of their mark-ups.

75.     Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

76.     **The Proposed Classes Satisfy the Rule 23(b)(3) Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only

individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Deceptive Acts Or Practices – N.Y. Gen. Bus. Law § 349**
**Asserted On Behalf Of The New York Class**

77.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

78.     N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

79.     Chipotle committed deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 by affirmatively and knowingly misrepresenting on its website and mobile app that it provides "free delivery" or "$1 delivery" for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "service fee" exclusively charged to delivery customers.

80.     Chipotle's actions regarding its food delivery service, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of food and in the furnishing of food delivery services.

81.     The deceptive acts or practices and the furnishing of food delivery services took place in this State because Chipotle operates in this State, created and published its deceptive

advertisements in this State, and because the food delivery transaction took place in this State when Chipotle accepted Plaintiff's food delivery order placed on the Chipotle app in this State. In short, the underlying nature of the deceptive transactions occurred in New York.

82.      N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action."

83.      Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

84.      Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Chipotle's business.

85.      As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

86.      Defendant is liable to Plaintiff and the Class for damages in amounts to be proven at trial.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Fraud in the Inducement**
**Asserted On Behalf Of The Nationwide Class**

87.      Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

88.      Chipotle's marketing and misrepresentations regarding its "free" or "$1" delivery fee for food orders placed through its website and app constitutes fraud in the inducement. Under New York law, the elements of a claim of fraud in the inducement are "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the

purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.,* 31 N.Y. 3d 569, 578-79, 106 N.E.3d 1176, 1182 (2018).

89.     Defendant made material misrepresentations regarding the true nature of Chipotle's delivery fee, which were false. Specifically, Defendant misrepresented on its website and mobile app that it provides "free delivery" or "$1 delivery" for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "service fee" exclusively charged to delivery customers.

90.     Defendant made these representations knowing them to be false or with recklessness regarding their accuracy.

91.     Defendant made these representations intending that consumers be induced to order low-cost food for delivery through the Chipotle website or app.

92.     Plaintiff and the proposed Class justifiably relied upon these representations when placing food orders for delivery through the Chipotle website or app.

93.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

94.     Defendant is liable to Plaintiff and the Class for damages in amounts to be proven at trial.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff on behalf of himself and the Classes seeks judgment in an amount to be determined at trial as follows:

(a)          For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)        For declaratory and injunctive relief as set forth above;

(c)        For an order requiring Defendant to disgorge and make restitution of all

monies it acquired by means of the unlawful practices set forth above;

(d)        For compensatory damages according to proof;

(e)        For statutory damages permitted by GBL § 349;

(f)        For punitive damages according to proof;

(g)        For reasonable attorneys' fees and costs of suit;

(h)        For pre-judgment interest; and

(i)        Awarding such other and further relief as this Court deems just, proper and

equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.


Dated: March 1, 2021

*s/ Jeffrey D. Kaliel*

Jeffrey D. Kaliel (DC Bar No. 983578)

*jkaliel@kalielpllc.com*

Sophia Goren Gold (DC Bar No. 1044723)

*sgold@kalielpllc.com*

**KALIEL PLLC**

1100 15th Street NW, 4th Floor

Washington, D.C.  20005

Tel: (202) 350-4783

*Attorneys for Plaintiff and the Putative Class*